**STATE OF CALIFORNIA, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF the NAVY, Does one through ten, Defendant–Appellee.**

No. 86–1972.

United States Court of Appeals, Ninth Circuit.

Argued April 14, 1987.

Submitted April 6, 1988.

Decided April 27, 1988.

Roderick E. Walston, Allene C. Zanger, Deputy Attys. Gen., San Francisco, Cal., for the plaintiff-appellant.

Robert L. Klarquist, J. Carol Williams, Dept. of Justice, Washington, D.C. for defendant-appellee.

James Thornton, Natural Resources Defense Council, New York City, Michael Axline, John Bonine, Eugene, Or., for amicus curiae.

Before CHOY, GOODWIN and TANG, Circuit Judges.

CHOY, Circuit Judge:

The State of California ("California") brought this action against the United States Department of the Navy ("Navy") for alleged violations of a state water pollution discharge permit. The complaint alleges that the Navy violated the terms and conditions of its permit from October 1983 through July 1984. by discharging waste that was not properly treated into the San Francisco Bay. The complaint sought recovery of civil penalties under §§ 505(a)(1) and 309(d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1365(a)(1), 1319(d), and Cal.Water Code §§ 13385 and 13386.

The Navy filed a motion to dismiss under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6), alleging that the district court lacked subject matter jurisdiction and that California had failed to state an actionable claim. On April 2, 1986, the district court granted the Navy's motion. *California v. Department of the Navy*, 631 F.Supp. 584 (N.D.Cal. 1986). The court held that a state is not a "citizen" within the meaning of § 505(a) of the CWA, and that § 309(d), in conjunction with § 313, 33 U.S.C. § 1323, does not create an independent jurisdictional ground for a state to seek civil penalties against a federal entity. 631 F.Supp. at 590–92. California timely appeals.[1]

We review *de novo* the district court's conclusion that it lacked subject matter jurisdiction. *Carpenters Southern California Administrative Corp. v. Majestic Housing*, 743 F.2d 1341, 1343 (9th Cir. 1984). We affirm.

## STATUTORY BACKGROUND

The opinion below and prior decisions of this court have discussed the purpose and

---

**1.** California's claim under the citizen suit provision of § 505 is no longer before us. The Supreme Court recently held that "§ 505 does not permit citizen suits for wholly past violations." *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* — U.S. —, 108 S.Ct. 376, 384–85, 98 L.Ed.2d 306 (1987). On January 4, 1988, we granted California's motion to withdraw the appeal of its § 505 claim in light of *Gwaltney*. We thus express no opinion as to whether the district court correctly held that a state is not a "citizen" within the meaning of § 505(a).

The district court did not specifically address the cause of action brought under Cal.Water Code §§ 13385–86, for which California asserts jurisdiction under § 402(b)(7), 33 U.S.C. § 1342(b)(7). Indeed, although raised in its complaint, it is not clear that California pursued this claim before the district court. However, a federal appellate court may decide an issue not adjudicated below where the proper resolution of that issue is clear. *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This is such an issue. .

statutory background of the CWA.[2] It is sufficient for our purposes to note that the CWA authorizes a permit system—the National Pollutant Discharge Elimination System ("NPDES")—for the enforcement of pollution discharge limitations. Although the Administrator of the Environmental Protection Agency ("Administrator") is authorized to issue NPDES permits directly, each state may also establish and administer its own permit program. 33 U.S.C. § 1342(a), (b). State programs require the Administrator's approval, but the Administrator must approve any state system unless he or she determines that the state does not have "adequate authority" to enforce the Act. 33 U.S.C. § 1342(b). The California program, which the Administrator authorized on May 14, 1983, is contained in Chapter 5.5 of the California Water Code. Cal.Water Code §§ 13370–13389.

Once a state permit program has been approved and implemented, the Act provides for an elaborate enforcement scheme involving the Administrator, the states, and citizens. The extent to which Congress intended the various enforcement mechanisms to interact is the issue presently before us.

## DISCUSSION

### 1. *Jurisdiction Under Section 309(d)*

Section 313 of the CWA requires all federal facilities to comply with state NPDES permit requirements. 33 U.S.C. § 1323(a). Section 309(d) declares that any person who violates a state-issued permit "shall be subject to a civil penalty not to exceed $10,000 per day of such violation." 33 U.S.C. § 1319(d). California thus argues that § 309(d) of the CWA, in conjunction with § 313, provides an independent jurisdictional ground for a state to seek civil penalties against federal dischargers.

■ While § 309(d) does not explicitly indicate who is authorized to seek civil penalties, we agree with the district court's conclusion that Congress intended to authorize only the Administrator to seek such penalties.

Both the structure of § 309 and its legislative history indicate that the section is intended to outline the Administrator's enforcement powers under the CWA. Section 309(a), (b), and (f) specifically authorize the *Administrator* to bring various compliance actions, and § 309(e) outlines a procedural requirement in terms which suggest that actions under § 309 will be brought by the Administrator. It is also significant that in the authorization of citizen suits under § 505(a), Congress felt it necessary to expressly provide for § 309(d) civil penalties. This further suggests that Congress intended to otherwise limit access to § 309(d).

The legislative history of § 309 also supports this conclusion. The House Report states that "[t]he provisions of section 309 are supplemental to those of the State and are available to the Administrator in those cases where ... State ... enforcement agencies will not or cannot ... enforce the requirements of this Act." H.R.Rep. No. 911, 92d Cong., 2d Sess. 115 (1972). The Senate Report refers to § 309 as the "federal enforcement" provision and states that it is intended to create federal enforcement powers *concurrent* with those of the states. S.Rep. No. 414, 92 Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 3668, 3729–30. The report similarly outlines the Senate Committee's intent that the authority granted in the *Administrator* by § 309 should be used judiciously. *Id. See also* 118 Cong. Rec. 33693 (1972) (statement by Senator Muskie outlining the Administrator's responsibilities under § 309, the "enforcement section" of the Act). The legislative history to the 1986 amendments to the CWA again refers to the remedies available to the *Administrator* under § 309. H.R.Rep. No. 1004, 99th Cong., 2d Sess. 132 (1986).

■ We similarly reject California's suggestion that we find an implied cause of action under § 309(d). In *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), the

---

**2.** *See Shell Oil Co. v. Train,* 585 F.2d 408, 409–10     (9th Cir.1978); *California,* 631 F.Supp. at 586.

Court cautioned against unnecessary judicial activism in enforcement of the CWA, noting that the CWA contains "unusually elaborate enforcement provisions, conferring authority to sue ... both on government officials and private citizens." In light of those provisions, "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies." *Id.* at 14, 101 S.Ct. at 2623.

Finally, the Court in *Gwaltney* specifically differentiated between citizen suits under § 505(a) and the Administrator's authority to seek penalties for past violations under § 309(d). The Court stated that a comparison of the two sections supported its conclusion that "citizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation." *Gwaltney*, 108 S.Ct. at 382. Further, the Court recognized that the Administrator's ability to secure compliance from a violator through a bargain in which the Administrator agreed not to seek § 309(d) penalties would be limited if citizens could later use § 505(a) to pursue those foregone penalties. *Id.* at 383. Permitting the state to seek penalties for past violations through § 309(d) would similarly frustrate the Administrator's ability to enforce the CWA in the public's best interest.

In short, we agree that Congress intended § 309 to be utilized solely by the Administrator, except to the extent that § 505(a) expressly authorizes citizens to step into the shoes of the Administrator through § 309(d) to obtain civil penalties in citizen suits.[3] We thus affirm the district court's dismissal of California's § 309(d) claim.

## II. *Jurisdiction Under § 402(b)(7)*

■ California also asserts federal jurisdiction under § 402(b)(7) of the CWA. This provision states that in order to obtain approval of an NPDES program, a state must have adequate authority "[t]o abate violations of the permit program, including civil and criminal penalties." 33 U.S.C.

§ 1342(b)(7). California has included civil penalty provisions in its NPDES program. *See* Cal.Water Code §§ 13385–86. California asserts that because these provisions were mandated by § 402(b)(7) and approved by the Administrator, they fall within § 313, which subjects federal dischargers to civil penalties "arising under" federal law. 33 U.S.C. § 1323(a). This argument is neither supported by the structure of the CWA nor its legislative history.

Section 402(b) itself requires a state to submit to the Administrator a description of the program it intends to administer under *state* law. 33 U.S.C. § 1342(b). Further, Cal.Water Code § 13386, which outlines a portion of the requisite enforcement provisions, authorizes the State Attorney General to seek civil penalties in *state* superior court.

The legislative history clearly states that the state permit programs are "not a delegation of Federal authority," but instead are state programs which "function[ ] in lieu of the Federal program." H.R.Rep. No. 830, 95th Cong., 1st Sess. 104 (1977), U.S.Code Cong. & Admin.News 1977, 4327, 4479.

Finally, we decline the invitation to find a Congressional waiver of sovereign immunity without finding the requisite explicit Congressional intent. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). California's position would essentially nullify § 313(a)'s express limitation of civil penalties against federal agencies to those arising under federal law. Congress clearly did not intend such a result.

## CONCLUSION

Congress specifically contemplated that states would seek both civil and criminal penalties for the violation of state NPDES permits in state court under state law. *See* 33 U.S.C. § 1342(b)(7). Thus, where Congress intended to grant states an active role in the enforcement process, "it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S.

---

**3.** Having determined that the § 309 does not provide an independent jurisdictional ground for the State's suit, we need not decide whether the language of §§ 309(d) and 313 contains the requisite explicit waiver of sovereign immunity to allow an action against the Navy.

560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979). In light of the extent to which Congress has delineated the respective roles of the Administrator, the states, and private individuals under the CWA, we are unwilling to broaden the scope of the over-all enforcement scheme. *See Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). " '[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Sea Clammers* 453 U.S. at 14–15, 101 S.Ct. at 2623 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)).

The district court's conclusion that it lacked subject matter jurisdiction to hear California's claims is AFFIRMED.